STATE OF NORTH CAROLINA v. ROBERT LEE BROWN

No. 7816SC882

(Filed 6 February 1979)

1. **Constitutional Law § 56; Criminal Law § 91— jurors in courtroom during guilty pleas and evidence in other cases—G.S. 15A-943—right to impartial jury**

   The trial of defendant by a jury panel which had the opportunity to hear guilty pleas and the presentation of evidence and sentencing thereon in other cases did not contravene the language and objectives of G.S. 15A-943, which prohibits the calendaring of jury cases in certain counties on a day. arraignments are calendared, since the legislative intent in enacting G.S. 15A-943 was to minimize the imposition on the time of jurors and witnesses, not to insure the impartiality of jurors; nor did such procedure violate defendant's right to be tried by an impartial jury.

2. **Criminal Law § 102.9— prosecutor's characterizations of defendant as killer, robber, thief—no prejudice**

   In a prosecution for armed robbery, statements by the assistant district attorney that defendant was not a "gentleman," that he was a ".44 caliber killer," a "robber" and a "thief" were not prejudicial to defendant since evidence supported such characterizations of defendant except for the word killer, to which defense counsel promptly objected and was sustained by the court; furthermore, the prosecution's point that armed robbery was a crime next in severity only to murder was a valid one.

3. **Criminal Law §§ 102.5, 170.2— absence of witness—question by prosecutor**

   Defendant was not prejudiced by the prosecutor's question, "Fred Drye ain't going to come in here and to this Courtroom and swear to a pack of lies, is he?" since it could not have affected the outcome of the case.

4. **Criminal Law § 66.11— identification of defendant—no illegal procedures—no mistaken identification**

   Evidence in an armed robbery prosecution was sufficient to support the trial court's findings that the witness had ample opportunity to observe defendant at the crime scene; nothing suggested a misidentification of defendant; no illegal identification procedures were used; and the confrontation two and one-half hours after the alleged robbery when defendant was brought into the witness's store by officers was not necessarily suggestive or conducive to irreparable mistaken identification.

APPEAL by defendant from *Hobgood, Judge.* Judgment entered 2 June 1978 in Superior Court, ROBESON County. Heard in the Court of Appeals 15 January 1979.

Defendant was indicted for armed robbery, a violation of G.S. 14-87. Defendant was tried by a jury and a verdict of guilty was

returned. From judgment sentencing him to 20 years in the North Carolina Department of Correction, defendant appeals.

The record discloses that on Wednesday morning of that session of court, and prior to the calling of the case, counsel for defendant objected to the taking of any pleas in the presence of the prospective jurors. The objection was overruled.

Evidence for the State tended to show that Woodrow Wilson Johnson was the proprietor of a store selling general merchandise and gasoline. Johnson testified that a gray Plymouth automobile pulled into his service station around 10:00 a.m. on 15 February 1978. The witness was asked if he could identify the person in the automobile and counsel for defendant objected. A *voir dire* was then conducted, and the trial court found facts and concluded that the identification of defendant by this witness was proper.

The witness Johnson then testified that the man driving the Plymouth automobile was the defendant. Johnson asked the defendant if he wanted gas and was told to fill it up. Johnson took the license number of the automobile and wrote it down. The defendant then entered the store with a pistol, robbed the prosecuting witness's cash register and took his wallet, and left the store after having made Mr. Johnson lie on the floor. Johnson then called the Robeson County Sheriff's Department and gave them a description of the individual, of his car, and the license plate number. Detective Luther Sanderson testified that he subsequently located the suspect's vehicle at the trailer of one Velma Butler. After an investigation, the defendant was apprehended, identified by Johnson, and arrested for armed robbery.

The defendant admitted to police officials that he had been the only individual using his car on the morning of the robbery. The police officers also recovered from the defendant's residence a bag of money and an overcoat which was allegedly worn in the robbery.

The defendant testified in his own behalf and denied that he committed the robbery. He did admit that the clothing, bag, and car were his. Defendant further testified that Johnson's identification of him was in error as was his identification of the automobile and license tag number.

*Attorney General Edmisten, by Assistant Attorney General Elisha H. Bunting, Jr., for the State.*

*Adelaide G. Behan and I. Murchison Biggs, for defendant appellant.*

CARLTON, Judge.

[1]  Defendant contends first that the trial court committed prejudicial error in permitting the case to be tried by a jury panel which had the opportunity to hear guilty pleas and the presentation of evidence and sentencing thereon in other cases. He argues that the procedure followed in the trial court contravenes the language and objectives of G.S. 15A-943 and violates his right to be tried by an impartial jury. We find no merit in this assignment of error.

G.S. 15A-943 provides that, in counties in which there are regularly scheduled 20 or more weeks of trial sessions of superior court at which criminal cases are heard, the prosecutor must calendar arraignments in the superior court on at least the first day of every other week in which criminal cases are heard. Particularly pertinent to defendant's argument here is that portion of the statute which reads as follows: "No cases in which the presence of a jury is required may be calendared for the day or portion of a day during which arraignments are calendared." Defendant interprets the quoted portion of the statute to indicate a legislative intent that prospective jurors not be allowed to observe proceedings involving other defendants because they might somehow become prejudiced against a defendant who might later be tried before them.

This was obviously not the intent of our legislature in enacting 15A-943. The official commentary to G.S., Chap. 15A, Art. 51, in which G.S. 15A-943 is included, states the purposes of the article and provides in part as follows: "Time for jurors and witnesses will be saved if matters not requiring their presence can be disposed of before they are brought in. The commission feels that it is important to our system of justice that unnecessary impositions on the time of citizens be avoided."

We believe the legislative intent in enacting this statute was to minimize the imposition to the time of jurors and witnesses,

and we reject defendant's argument that it was designed as a new approach to ensure the impartiality of jurors.

In this same connection, defendant also argues that the procedure employed violates the defendant's right to be tried by an impartial jury. Without citing authority, defendant generally argues that prospective jurors become biased against all defendants when hearing the proceedings which precede the sentencing of those who plead guilty. He argues that law enforcement officials are more likely to be given greater credence by the jury and that the jury may stray from their function as fact finders and only consider the prosecution's side of the case. We also reject that argument.

Unquestionably, a defendant in a criminal trial has the right to a fair, unbiased, and impartial jury. G.S. 9-15(a) is one of many safeguards to insure that right. That statute provides that in selecting the jury, the court, or any party to an action, has the right to make direct oral inquiry as to the fitness and competency of any person to serve as a juror. The *voir dire* examination of jurors allowed by that statute serves the dual purpose of ascertaining whether grounds exist for challenge for cause and to enable counsel to exercise intelligently the peremptory challenges allowed by law. *State v. Allred*, 275 N.C. 554, 169 S.E. 2d 833 (1969). The record before us does not indicate that any of the jurors who served could not fairly and intelligently have reached a verdict; nor does it indicate the use of any peremptory challenges by the defendant. Hence, defendant has failed to show that any member of the jury was unable to give him a completely fair trial.

The burden of showing such prejudicial denial of a fair trial falls on the defendant. *State v. Boykin*, 291 N.C. 264, 229 S.E. 2d 914 (1976). The record before us is barren of any showing of prejudice in the method used for selection of jurors. Indeed, we are unable to determine from this record whether counsel for defendant even made inquiry of prospective jurors on the *voir dire*.

[2] Defendant's second assignment of error is that certain language used by the assistant district attorney was prejudicial to the defendant and exceeded the bounds of propriety. While we do not approve of some of the language used, we do not find it to be sufficiently prejudicial to require a new trial.

In his final presentation to the jury, the assistant district attorney argued that armed robbery is one of the most serious crimes in North Carolina and, in that connection, stated, "[I] suppose, maybe, if he destroyed that witness, there wouldn't be any case at all. And that's just how close it is to first degree murder." At another point in the jury argument, the assistant district attorney stated: "Because, but for the grace of God, Mr. Johnson's ability to keep his wits about him, we got the .44 caliber killer sitting over there . . . ."

Following objection, the trial court ordered the word "killer" stricken. Defendant, however, cites as error the trial court's failure to sustain his objection to the entire discourse of the assistant district attorney concerning first degree murder.

During cross-examination of the witness Johnson, the following exchange took place:

> MISS BEHAN: Now, sir, the gentleman that you saw in the store on February 15, describe any facial hair that he may have had?

> MR. BOWEN: I OBJECT to him being referred to as a "gentleman". He's a robber and a thief.

> MISS BEHAN: OBJECTION, Your Honor, This is a conclusion.

> COURT: Sustained. Conclusion. Sustained all the way around.

Defendant also asserts that prejudice resulted from heated discussion between his counsel and the assistant district attorney as evidenced by the following exchange during the prosecution's final argument to the jury:

> Now, Ladies and Gentlemen of the Jury, it makes me cringe when I see good citizens who have taken their time out from work because they have been commanded to come up here and serve on the jury—it makes me cringe to see that games are being played with you, and—

> MISS BEHAN: OBJECTION, Your Honor.

> MR. BOWEN: —I resent the fact that suggestions are—

MISS BEHAN: OBJECT to his use of the word "games".

COURT: OBJECTION sustained. Don't use the word "games".

MR. BOWEN: All right. You decide what they are, Ladies and Gentlemen of the Jury, but, now, I'm quoting from the public record right here, the subpoenas that Miss—the lady lawyer is talking about here.

MISS BEHAN: OBJECT.

MR. BOWEN: Fred—

COURT: Wait, wait. OBJECTION sustained.

MR. BOWEN: Drye, 21—

COURT: Wait, Did you hear me?

MR. BOWEN: Yes, sir.

COURT: You would have to read all the subpoenas to get them in.

MR. BOWEN: I will be happy to.

COURT: No, you won't do it.

Several rules have evolved with respect to alleged improper remarks by the prosecution. Argument of counsel must be left largely to the control and discretion of the presiding judge, and counsel must be allowed wide latitude in the argument of hotly contested cases. *State v. Seipel*, 252 N.C. 335, 113 S.E. 2d 432 (1960); *State v. Barefoot*, 241 N.C. 650, 86 S.E. 2d 424 (1955); *State v. Bowen*, 230 N.C. 710, 55 S.E. 2d 466 (1949); *State v. Little*, 228 N.C. 417, 45 S.E. 2d 542 (1947). Counsel may argue to the jury the facts in evidence and all reasonable inferences to be drawn therefrom, together with the relevant law, so as to present his side of the case. *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975); *State v. Noell*, 284 N.C. 670, 202 S.E. 2d 750 (1974). He may not, however, by argument, insinuating questions, or other means, place before the jury incompetent and prejudicial matters not legally admissible in evidence, and may not "travel outside of the record" or inject into his argument facts of his own knowledge or other facts not included in the evidence. *State v. Phillips*, 240

N.C. 516, 82 S.E. 2d 762 (1954); *State v. Dockery*, 238 N.C. 222, 77 S.E. 2d 664 (1953). It is the duty of the trial judge, upon objection, to censor remarks not warranted by the evidence or the law and, in cases of gross impropriety, the court may properly intervene, *ex mero motu. State v. Britt*, 288 N.C. 699, 220 S.E. 2d 283 (1975). On the other hand, when the prosecuting attorney does not go outside of the record and his characterizations of the defendant are supported by evidence, the defendant is not entitled to a new trial by reason of being characterized in uncomplimentary terms in the argument. *State v. Bowen, supra.*

In the instant case, the assistant district attorney, as noted contextually above, stated that the defendant was not a "gentleman", that he was a ".44 caliber killer", a "robber" and a "thief." The use of epithets which are warranted by the evidence have been approved by our Supreme Court. *State v. Bowen, supra*, and *State v. Wortham*, 287 N.C. 541, 215 S.E. 2d 131 (1975). Defendant here was charged with armed robbery and there was ample evidence to support that charge. As noted in Wortham, *supra*, at 546, "An armed robber is a thief, a robber, and certainly a thief and a robber may be aptly characterized as a scoundrel." Also, there was adequate evidence that a .44 caliber pistol was used in the commission of the crime. The closest the assistant district attorney came to traveling outside the record was in using the word "killer." While the prosecution came perilously close to exceeding the bounds of propriety in the use of that word, we do not believe that, taken contextually, it was prejudicial to defendant. In the first place, defense counsel's prompt objection to the use of the word was sustained by the court and the jury was admonished not to consider it. The trial judge's prompt action removed any possibility of reversible error. *State v. Sparrow*, 276 N.C. 499, 173 S.E. 2d 897 (1970), *cert. denied*, 403 U.S. 940, 91 S.Ct. 2258, 29 L.Ed. 2d 719 (1971); *State v. Ray*, 212 N.C. 725, 194 S.E. 482 (1938). Moreover, the prosecution's point that armed robbery is a crime next in severity only to murder is a valid one.

Defendant also argues that it was improper for the prosecutor to state "that games are being played" with the jury. Here, again, the trial court promptly sustained defendant's objection. Moreover, the argument was within the bounds of the evidence presented in that defendant had testified that he had

been with someone else at the time of the commission of the crime and there was testimony as to whether the witness was subpoenaed and at what address.

[3] Defendant also argues that the following question posed by the prosecutor was improper: "Fred Drye ain't going to come in here and to this Courtroom and swear to a pack of lies, is he?" This question is similar to that cited by the defendant in *State v. Gainey*, 280 N.C. 366, 185 S.E. 2d 874 (1972). There, the prosecutor asked defendant if he had subpoenaed a certain witness and the defendant answered that the witness did not want to come to court. The prosecutor then asked, "He didn't want to go on the stand and perjure himself, did he?" The Supreme Court held the question was objectionable but that it was inconceivable that it affected the outcome of the case and, therefore, was not prejudicial error. Moreover, the Supreme Court has held it permissible to question a defendant as to the failure to produce exculpatory testimony from witnesses available to the defendant. *State v. Thompson*, 293 N.C. 713, 239 S.E. 2d 465 (1977).

We also find no merit in defendant's argument that the personalities of counsel were injected into the trial of this action and that heated discussions took place to the extent that defendant was prejudiced.

Our review of the record discloses that the trial judge maintained firm control over the conduct of the participants and exercised sound discretion in every instance. With no gross impropriety appearing of record, we will not attempt to substitute our judgment for that of the trial court. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976).

Again, we consider it proper to observe that the assistant district attorney came dangerously close to crossing the line from allowable language to that which would require reversal.

[4] Defendant's final assignment of error is that the trial court committed error in admitting the identification testimony of the witness, Woodrow Johnson. Defendant argues that the testimony was tainted since the only time the witness observed the defendant after the incident was in the presence of police officers or his counsel and since the description of the defendant, other than the fact that the defendant was the robber, was nondescript. We do not agree.

When the admissibility of in-court identification testimony is challenged on the ground that it is tainted by out-of-court identification made under constitutionally impermissible circumstances, the trial court is required to make findings as to the background facts to determine whether the proffered testimony meets the test of admissibility. When the facts so found are supported by competent evidence, they are conclusive on appellate courts. *State v. Tuggle*, 284 N.C. 515, 201 S.E. 2d 884 (1974); *State v. Morris*, 279 N.C. 477, 183 S.E. 2d 634 (1971). The trial court concluded from the *voir dire* that there was ample opportunity for the witness to observe the defendant, that nothing appeared in the evidence to suggest a misidentification of the defendant, that no illegal identification procedures were used and that the confrontation 2½ hours after the alleged robbery when the defendant was brought into the witness's store by officers was not unnecessarily suggestive or conducive to lead to irreparable mistaken identification. The trial court's findings are supported by plenary uncontradicted evidence and defendant's objection to the in-court identification testimony of Woodrow Johnson was properly overruled.

For the reasons stated, we find that the defendant received a fair trial, free from prejudicial error.

No error.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.