STATE OF NORTH CAROLINA v. ERNEST RICHARD COFIELD

No. 856SC327

(Filed 19 November 1985)

1. **Constitutional Law § 60; Grand Jury § 3.3— selection of grand jury foreman—racial discrimination—evidence insufficient**

    There was no error in a prosecution for breaking and entering and rape in the trial court's denial of defendant's motion to quash the indictment because of discrimination against blacks in the selection of grand jury foremen. Although uncontradicted testimony indicated that 61% of the county was black and that only one black person served as a grand jury foreman in eighteen years, the record did not indicate the number of persons who served as grand jury foremen during the relevant period and it was not possible to perform the necessary statistical calculations and comparisons. Moreover, even if a violation of the Fourteenth Amendment could be found, reversal was not mandated by any precedent binding on the Court of Appeals.

2. **Criminal Law § 102.5— cross-examination of defendant—prosecutor's opinion of defendant's credibility—no error**

    There was no prejudicial error in a prosecution for breaking and entering and rape where the prosecutor cross-examined defendant in a manner which allegedly insinuated to the jury the prosecutor's opinion of defendant's credibility where the court sustained some of defendant's objections and where

the remaining questions, assuming they were improper, did not have the degree of inflammatory impact necessary to mandate a new trial.

3. **Criminal Law § 91.6— denial of continuance—non-testimonial identification tests not available—no prejudice**

There was no error in the trial court's denial of a motion to continue a prosecution for breaking and entering and rape where the only ground given in support of the motion was the unavailability of certain non-testimonial identification test results, which were introduced by defendant and which showed no evidence of defendant's hair at the scene of the crime. The length of time available to study the negative test results could not conceivably prejudice defendant.

4. **Criminal Law § 138— rape—aggravating factor—choking victim into unconsciousness—joinable offense—error**

The trial court erred when sentencing defendant for rape by finding the non-statutory aggravating factor that defendant choked the victim until she was unconscious after committing the rape. The commission of a joinable offense may not be used as an aggravating factor. G.S. 15A-1340.1 *et seq.*

5. **Criminal Law § 138— rape—aggravating factor—physical and emotional injury in excess of that normally present**

Where a rape conviction was remanded for resentencing on other grounds, it was noted that physical or emotional injury in excess of that normally present in an offense may be considered as a factor in aggravation, although a certain degree of emotional injury is inherent in all rape.

Judge BECTON concurring in part and dissenting in part.

APPEAL by defendant from *Allsbrook, Judge.* Judgments entered 4 August 1984 in Superior Court, NORTHAMPTON County. Heard in the Court of Appeals 16 October 1985.

Defendant was charged in a proper bill of indictment with 1) forcible rape and 2) felonious breaking and entering of a dwelling.

At trial the State offered evidence tending to show the following: On 25 June 1984, shortly after 9:00 a.m., the victim, "Debra," answered a knock at her front door. When she answered, a man wearing a blue work uniform asked for water for his logging truck which was parked outside. Debra closed the door, retrieved jugs from her kitchen and took them to an enclosed back porch to fill them. While she filled the jugs, the man entered the enclosure and asked for more water and then for a cigarette. Debra returned from her kitchen with a package of cigarettes in her hand. The man stepped to the kitchen door and received the cigarettes. While Debra turned to close the kitchen

door, the man grabbed her and dragged her to her bedroom and raped her. Before he fled, the man choked Debra until she lost consciousness. Debra later identified her assailant as defendant, Ernest Richard Cofield, a truck driver for a local logging company.

The jury found defendant guilty of second degree rape and felonious breaking or entering. From judgments imposing consecutive sentences of thirty years for second degree rape and three years for felonious breaking or entering, defendant appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General W. F. Briley, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Louis D. Bilinois, for defendant, appellant.*

HEDRICK, Chief Judge.

[1] By Assignment of Error No. 4 based upon Exception No. 5, defendant contends the trial judge erred in failing to quash defendant's indictment because discrimination against blacks in selection of grand jury foremen abridged defendant's due process and equal protection rights as guaranteed by the North Carolina and United States Constitutions.

It is well settled that purposeful discrimination against blacks in the selection of grand jury foremen is forbidden by the Fourteenth Amendment to the United States Constitution. *Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed. 2d 739 (1979). The narrow question raised by defendant is whether the evidence of discrimination in the record is sufficient to require us to reverse a conviction. We think the evidence before us is insufficient.

The presumption is that public officials have performed their duties in a fair, legal and constitutional manner. *State v. Wilson,* 262 N.C. 419, 423, 137 S.E. 2d 109, 113 (1964). In order to rebut this presumption in the context of grand jury foreman selection, the defendant must give testimony covering a significant period of time showing the number of different individuals serving as grand jury foremen, the number of blacks serving as grand jury foremen, the relative size of the black population in the relevant judicial district, and a sufficiently large disparity between the

percentage of blacks in the population and the percentage of blacks serving as grand jury foremen to demonstrate that racial factors entered into the selection process. *Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed. 2d 739 (1979).

Uncontradicted testimonial evidence indicates that sixty-one percent of Northampton County is black. R. J. White testified that during the nearly eighteen years in which he has served as Northampton County Superior Court Clerk, only one black person served as grand jury foreman. The black grand jury foreman served two six-month terms starting in July of 1979. The record before us today, however, does not indicate the number of persons who have served as grand jury foremen over the relevant time period. As the United States Supreme Court has held, "[i]nasmuch as there is no evidence in the record of the number of foremen appointed, it is not possible to perform the calculations and comparisons needed to permit a court to conclude that a statistical case of discrimination has been made out and proof under the 'rule of exclusion' fails." *Id.* at 571-572, 99 S.Ct. at 3008, 61 L.Ed. 2d at 759 (1979) (citations omitted).

Even if a violation of the Fourteenth Amendment could be found in the selection of grand jury foremen, reversal of an otherwise valid conviction is not mandated by any precedent binding on this Court. In fact, the United States Supreme Court has indicated that "[s]o long as the grand jury itself is properly constituted, there is no risk that the appointment of any one of its members as foremen will distort the overall composition of the array or otherwise taint the operation of the judicial process." *Hobby v. United States*, ---- U.S. ----, ----, 104 S.Ct. 3093, 3098, 82 L.Ed. 2d 260, 268 (1984).

[2] By Assignment of Error No. 9, based upon Exceptions Nos. 17-20, defendant contends that "[t]he trial court erred in allowing the prosecutor, over the defendant's objections, to engage in a cross-examination of the defendant which improperly insinuated to the jury the prosecutor's opinion of the defendant's credibility."

The pertinent portions of the cross examination are as follows:

Q. Mr. Cofield, I'll ask you if on June the twenty-fifth, 1984, if you didn't talk with Debora Lynn in the same con-

vincing manner that you are sitting there testifying to the members of the jury.

MR. LIVERMON: Object.

THE COURT: Sustained.

Q. And I'll ask you if you didn't convincingly then step inside then and grab her around her arm so that she couldn't move.

MR. LIVERMON: Object, if your Honor please.

THE COURT: Overruled.

A. No, sir.

Q. And, Mr. Cofield, I'll ask you then if you didn't stand there just as you are doing right now looking at her with nothing on your face and tell her—ask her—tell her that she was going to tell her husband and her father.

MR. LIVERMON: Object, if your Honor please. And I specifically direct my objection to the point that Mr. Beard comments on the actions of the defendant, as he is seated in the witness chair.

THE COURT: Well—I'm going to overrule the objection to the last question.

A. No, sir.

Q. And I'll ask you again if you weren't just as convincing today as you were on June the twenty-fifth when you talked with her at her front door.

MR. LIVERMON: Object.

THE COURT: Sustained.

You don't have to answer that.

The transcript clearly shows that the trial court sustained defendant's objections upon which Exceptions Nos. 17 and 20 were based. The trial court's prompt action removed any possibility of reversible error in regard to these two exceptions. *State v. Brown*, 39 N.C. App. 548, 251 S.E. 2d 706, *disc. rev. denied*, 297 N.C. 302, 254 S.E. 2d 923 (1979).

As to Exceptions Nos. 18 and 19, we note that the scope of cross examination is firmly lodged in the trial judge's discretion, and that a new trial will not be ordered unless the verdict was influenced by improper questions. Assuming without deciding that the questions at issue were improper, they did not have the degree of inflammatory impact necessary to mandate a new trial. *State v. Bailey*, 49 N.C. App. 377, 271 S.E. 2d 752 (1980), *disc. rev. denied*, 301 N.C. 723, 276 S.E. 2d 288 (1981).

[3] Defendant asserts that the trial court erroneously denied a motion to continue and thereby denied defendant any adequate opportunity to examine certain items of evidence. The only evidentiary ground given by defendant in support of his motion to continue was the unavailability of certain "non-testimonial identification test results" conducted to detect the presence of defendant's hairs at the scene of the crime. The test results uncovered no evidence of defendant's hairs and were introduced at trial by defendant, not the State. The length of time available to study these negative test results which tend to support defendant's case could not conceivably prejudice the defendant.

Whether a defendant bases his appeal upon an abuse of judicial discretion or a denial of his constitutional rights, he must show both error and prejudice stemming from the denial of his motion to continue before he is entitled to a new trial. *State v. Penley*, 6 N.C. App. 455, 170 S.E. 2d 632 (1969), *disc. rev. denied*, 276 N.C. 85 (1970). Here, neither error nor prejudice has been shown.

[4] By his final two assignments of error, defendant contends that at sentencing the trial court failed to adhere to the North Carolina Fair Sentencing Act, G.S. 15A-1340.1 *et seq*. Defendant contends that the trial court erred in finding the following non-statutory aggravating factor:

> (a) That after committing the offense of second degree rape and thereafter stating to the victim that she was going to tell on him and have him hung, the defendant then choked her until she was unconscious.

The conduct described in the trial court's finding is an offense separate but joinable with the rape charge. The commission of a joinable offense may not be used as an aggravating factor

State v. Cofield

under the Fair Sentencing Act. *State v. Puckett*, 66 N.C. App. 600, 312 S.E. 2d 207 (1984). Therefore, this case must be remanded for resentencing.

[5] Because this case must be remanded for resentencing, we need not reach defendant's contention that the trial court erroneously found as an aggravating factor that the victim continues to suffer mentally and emotionally from this incident. The law regulating this question is clear. The impact of the crime on the victim is relevant to the question of sentencing. Where the trial court properly finds physical or emotional injury in excess of that normally present in an offense, he may consider the injury as an additional factor in aggravation or as proof that the offense was especially heinous, atrocious, or cruel. *State v. Blackwelder*, 309 N.C. 410, 306 S.E. 2d 783 (1983).

On resentencing, the trial court should also be aware that a certain degree of emotional injury is inherent in all rape and it is presumed that the Legislature was guided by this fact when it set the presumptive sentence for rape.

No error in trial, remanded for resentencing.

Judge PARKER concurs.

Judge BECTON concurs in part and dissents in part.

Judge BECTON concurring in part and dissenting in part.

I concur in the majority's resolution of all issues except the equal protection issue. Believing that defendant made out a *prima facie* case of discrimination against blacks in the selection of grand jury foremen in violation of defendant's equal protection rights as guaranteed by the North Carolina and United States Constitutions, I dissent.

> Discrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice. Selection of members of a grand jury because they are of one race and not another destroys the appearance of justice and thereby casts doubt on the integrity of the judicial process. The exclusion from grand jury service of Negroes, or any group

otherwise qualified to serve, impairs the confidence of the public in the administration of justice. As this Court repeatedly has emphasized, such discrimination "not only violates our Constitution and the laws enacted under it but is at war with our basic concepts of a democratic society and a representative government." . . . The harm is not only to the accused, indicted as he is by a jury from which a segment of the community has been excluded. It is to society as a whole. "The injury is not limited to the defendant—there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts."

*Rose v. Mitchell,* 443 U.S. 545, 555-56, 61 L.Ed. 2d 739, 749, 99 S.Ct. 2993, 3000 (1979) (citations omitted).

I

A defendant establishes a *prima facie* case that he has been denied equal protection of the law when he shows that the procedure employed in the selection of grand jury foremen is susceptible to abuse or is not racially neutral and results in substantial underrepresentation of his race or of the identifiable group to which he belongs. *Rose v. Mitchell,* 443 U.S. at 565, 61 L.Ed. 2d at 755, 99 S.Ct. at 3005; *Castaneda v. Partida,* 430 U.S. 482, 494, 51 L.Ed. 2d 498, 510, 97 S.Ct. 1272, 1280 (1977). The burden then shifts to the State to rebut the *prima facie* case.

In its brief, defendant capsulates and analyzes the uncontradicted evidence establishing a *prima facie*, and unrebutted, case of unconstitutional exclusion of blacks from the position of grand jury foremen in Northampton County thusly:

During the 18 years prior to the return of the indictment against the defendant on July 2, 1984, only one black served as grand jury foreman in Northampton County. That person served for one year—i.e., two terms. During that same period, the court was presented with the opportunity to appoint some 36 foremen. While 61% of the county's population was black, a black member of the community held the position of foreman for only 5.6% of the time.

In my view, the disparity is drastic, and the statistically significant showing establishes a presumption of underrepresentation of

constitutional dimension. *See Castaneda; Sims v. Georgia,* 389 U.S. 404, 19 L.Ed. 2d 634, 88 S.Ct. 523 (1967). Simply put, I reject the State's assertion in its brief that the fact that a black man was appointed grand jury foreman on 1 July 1979 "totally obliterated any vestige of racial stigma which could conceivably be said to have existed prior to 1979 with respect to selection of grand jury foremen." One bee does not make honey nor does the sighting of a swallow presage spring. Aesop's Fable, "The Spend-thrift and the Swallow."

## II

Our justice system must provide a remedy to those whose equal protection rights have been violated. Consequently, I believe the trial court erred when it failed to quash the indict-ment in this case. It is not enough to assert as the majority does, ante p. 702, that "reversal of an otherwise valid conviction is not mandated by any precedent binding on this Court." After all, the precise issue raised in this appeal has not been before this Court. Moreover, quashing the indictment on the facts of this case is far less egregious than suppressing evidence or confessions un-constitutionally obtained even if the State thereby will be unable successfully to convict the defendant. Indeed, the social cost of dismissing or quashing the indictment in this case is no different than the social cost associated with the granting of a new trial for prejudicial error committed during the course of a trial.

In the context of an equal protection challenge, the United States Supreme Court indicated in *Rose v. Mitchell* that the costs attendant to retrying a defendant are "outweighed by the strong policy the Court consistently has recognized of combating racial discrimination in the administration of justice." 443 U.S. at 558, 61 L.Ed. 2d at 751, 99 S.Ct. at 3001. Nothing in *Hobby v. United States,* 468 U.S. ----, 82 L.Ed. 2d 260, 104 S.Ct. 3093 (1984), which the majority cites, undermines the sound and substantial policy reasons that impelled the *Rose v. Mitchell* decision. *Hobby* was a due process (not an equal protection) case brought by a white male who challenged the selection procedure of grand jury foremen in federal court. The United States Supreme Court ex-plained the distinction:

> *Rose* involved a claim brought by two Negro defendants under the Equal Protection Clause. As members of the class

allegedly excluded from service as grand jury foremen, the *Rose* defendants had suffered the injuries of stigmatization and prejudice associated with racial discrimination. The Equal Protection Clause has long been held to provide a mechanism for the vindication of such claims in the context of challenges to grand and petit juries.

*Hobby*, 468 U.S. at ----, 82 L.Ed. 2d at 267, 104 S.Ct. at 3098 (citations omitted).

Finally, I fear that the practical effect of the majority's opinion will be to send the wrong signal to superior court judges who appoint grand jury foremen in the counties once every six months. The procedure employed is familiar and was accurately detailed by the Northampton County Clerk of Court who testified that "the judge usually confers with whomever he wants to. Most of the time, it's the clerk and the sheriff and whoever he calls up to the bench." I simply cannot concur in an opinion that tells superior court judges, in effect, that they can obliterate the vestige of racial discrimination by appointing blacks as grand jury foremen for one year every eighteen years in a county that is 61% black. As Justice Marshall said in his dissent in *Hobby v. United States*, our institutions of criminal justice

> serve to exemplify, by the manner in which they operate, our fundamental notions of fairness and our central faith in democratic norms. They reflect what we demand of ourselves as a Nation committed to fairness and equality in the enforcement of the law. That is why discrimination "is especially pernicious in the administration of justice," why its effects constitute an injury "to the law as an institution," why its presence must be eradicated root and branch by the most effective means available.

468 U.S. at ----, 82 L.Ed. 2d at 271, 104 S.Ct. 3100-01 (footnote omitted).