STATE OF NORTH CAROLINA v. JETCHEL C. PARKER

No. 8412SC1173

(Filed 3 September 1985)

**1. Rape and Allied Offenses § 5— second degree sexual offense—evidence sufficient**

The evidence was sufficient to support a conviction of second degree sexual offense under G.S. 14-27.5 where the prosecutrix testified that defendant manipulated her "vagina," and "that he tried to put his penis into my vagina but could not . . . get it completely in."

**2. Rape and Allied Offenses § 4.3— prior sexual encounter with another man— properly excluded**

In a prosecution in which defendant was accused of committing a second degree sexual offense against a paralegal in a law office after she had gone to a nearby club for drinks with the attorney and defendant and then returned to the office with defendant, the trial court properly excluded evidence that the prosecutrix had on a prior occasion gone to the club with the attorney for drinks, then returned to the office where she had sex with the attorney on the sofa in the reception room. The testimony did not show a *pattern* of sexual behavior tending to show that the prosecutrix consented to sexual relations with defendant; defendant did not argue at trial that the evidence was admissible to show that the acts charged were not committed by defendant; and, while the evidence would impeach the prosecutrix and add to the defense theory that the prosecutrix fabricated the offense to get back at the attorney, it had a high potential for producing prejudicial inferences. Moreover, the trial judge stated that the defendant could introduce evidence that the attorney and the prosecutrix had a dating relationship. G.S. 8-58.6(b)(3).

APPEAL by defendant from *Battle, Judge.* Judgment entered 25 June 1984 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 26 August 1985.

The defendant was charged with second-degree rape, second-degree sexual offense, and kidnapping. At trial, at the close of the State's evidence, the judge dismissed the kidnapping charge. The jury acquitted the defendant of rape, but found him guilty of the second-degree sexual offense. The defendant was sentenced to ten years in prison.

The State's evidence showed that on 20 February 1984, the defendant spent the afternoon discussing with Fayetteville lawyer Jack Carter the details of a civil suit Carter was handling for defendant. At around 5:30 p.m., the two finished work and began drinking at the conference table in Carter's office. The prosecu-

trix, one of Carter's paralegal assistants, had left the office at 4:00 p.m. to go shopping and have a glass of wine with a friend, but returned around 7:30. The two men, who had consumed all but one-half inch of a fifth of bourbon whiskey, invited the prosecutrix to join them in finishing the bottle. She had a drink with them of whiskey mixed with cola.

Carter then suggested that they go to Sh-booms, a private club nearby, for another drink. The three stayed at the club approximately one hour. The prosecutrix testified that there she had one drink, while the two men had two to three drinks each. Carter left first and drove himself home, although defendant suggested that they both had had too much to drink and that he would call his son.

After Carter left, the defendant and the prosecutrix continued talking. The prosecutrix testified that the defendant had another drink while she had nothing more to drink. The prosecutrix paid for the drinks and then the two went out to the parking lot. As the prosecutrix was getting her car key out, the defendant told her he wanted to talk more with her and suggested they go back into Carter's law office. The prosecutrix said all right, but said also: "it has to be short. I need to get home."

She unlocked the door, and entered the reception area, turning on the light. Defendant came in behind her, and turned off the light. She turned the light back on and then he grabbed her, and tried to kiss her. She tried to get free but he continued to hold her and tried to get her skirt up and underclothing down. He forced her hand over his penis, and then masturbated. He had only a partial erection, and told her that he would not hurt her and that there was nothing he could do. At one point he succeeded in partially removing her underwear, and spreading her legs. The prosecutrix testified that he then attempted penetration but was unable to achieve erection. Eventually he let her go, and she left and went to a friend's house.

The defendant's evidence tended to show that the prosecutrix made advances towards him, by sitting on his lap, at Carter's office, before the three left for Sh-booms, and later at Sh-booms. Defendant testified that the prosecutrix became drunk at Sh-booms, and that when they left defendant suggested they go back in the office to have coffee and sober up. Defendant testified that

he and the prosecutrix sat in the reception area of the law office, smoking and talking. Defendant testified that the prosecutrix complained that no one, especially Jack Carter, respected her as a woman; that she said she had a pretty body; and that she took off part of her clothes in front of him. He testified that they hugged and kissed, and talked, and that the prosecutrix unzipped his pants and pulled his penis out. He testified further that he laid on top of her, but was unable to have an erection, and made no attempt to insert anything into her vagina. The defendant's testimony indicated that the prosecutrix either initiated or consented to whatever sexual contact the two had.

The defendant appeals his conviction of second degree sexual offense.

*Attorney General Lacy Thornburg, by Assistant Attorney General Evelyn M. Coman, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Robin E. Hudson, for defendant appellant.*

ARNOLD, Judge.

[1] The defendant challenges the sufficiency of the evidence to support his conviction of a second-degree sexual offense under G.S. 14-27.5. In examining the sufficiency of the evidence, we must assume that the testimony favorable to the State is true and consider whether it establishes beyond a reasonable doubt each element of the crime charged. *See State v. Robinson*, 310 N.C. 530, 313 S.E. 2d 571 (1984); *State v. Revelle*, 301 N.C. 153, 270 S.E. 2d 476 (1980). After careful consideration of the State's evidence in the present case, we conclude that it is sufficient to support the defendant's conviction under G.S. 14-27.5.

Under G.S. 14-27.5(a), "[a] person is guilty of a sexual offense in the second degree if the person engages in a sexual act with another person: (1) [b]y force and against the will of the other person. . . ." A "sexual act" is defined under G.S. 14-27.1(4) as: "cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body. . . ."

In the present case, the State's evidence shows that any sexual act between the defendant and the prosecutrix was clearly against the will of the prosecutrix. The defendant admits that "any object" may include parts of the human body, such as fingers. The defendant argues, however, that the prosecutrix's testimony that "[h]e had put his hand inside my vaginal area," is not sufficient to show penetration of the genital opening. We disagree.

The one statement quoted by defendant might raise some question with respect to penetration of the genital opening. However, there was additional testimony by the prosecutrix that defendant manipulated her "vagina," and "that he tried to put his penis into my vagina but he could not . . . get it completely in." Without further elaboration of the testimony, and in light of the ordinary meanings of common word usage, we find that the jury had before it sufficient evidence from which to find beyond a reasonable doubt each element of second-degree sexual offense under G.S. 14-27.5.

[2] The defendant contends also that the trial court erred by excluding evidence of a prior sexual encounter between the prosecutrix and attorney Jack Carter under the Rape Shield Act. The defendant sought to introduce evidence that on at least one occasion the prosecutrix and Carter had gone drinking at Sh-booms, then returned to the sofa in the reception room of Carter's law office, and had sex. Defendant argues that this evidence should have been admitted under G.S. 8-58.6(b)(3), which provides an exception to the Rape Shield Act for evidence tending to show "a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented. . . ."

We do not agree that the testimony defendant sought to have admitted reflected a *pattern* of sexual behavior tending to show that the prosecutrix consented to sexual relations with defendant. Attorney Carter testified in *voir dire* that he and the prosecutrix had had a romantic relationship and that on one occasion they had returned to the law office and reception room, after

drinking at Sh-booms, and had had sexual intercourse. This occurred, Carter testified, approximately one year before the prosecutrix's encounter with defendant. Defendant produced no other evidence of similar sexual behavior by the prosecutrix; nothing in the record indicates that the prosecutrix was in the habit of drinking with men at Sh-booms and then returning with them to the law office for sex. This single incident involving the prosecutrix and her boyfriend, a year prior to the alleged crime, does not qualify as a pattern of behavior under G.S. 8-58.6(b)(3), having probative value on the issue of consent which far outweighs any prejudicial effect. *See State v. Rhinehart,* 68 N.C. App. 615, 316 S.E. 2d 118 (1984); *cf. State v. Shoffner,* 62 N.C. App. 245, 302 S.E. 2d 830 (1983).

Defendant argues on appeal that the evidence was also admissible under G.S. 8-58.6(b)(2), which provides an exception for evidence "of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant. . . ." Defendant failed to make this argument at trial and therefore cannot now assert it. Even had defendant properly invoked the exception, we note that it does not apply to the facts of this case. Exception (b)(2) was intended to cover evidence that someone other than the defendant produced the injuries or sperm found on or in the prosecutrix. *See State v. Fortney,* 301 N.C. 31, 269 S.E. 2d 110 (1980). The defendant certainly does not submit the evidence of the prosecutrix's sexual activity with her boyfriend, of a year before, to put in question the identity of the person who had a forcible sexual encounter with her on 20 February 1984.

The defendant argues further that the evidence of the prosecutrix's prior sexual conduct was necessary to impeach her and to establish the defense theory of fabrication. We note first that the defense counsel disclaimed any attempt at trial to introduce the evidence for impeachment purposes, but rather relied on the exception to the Rape Shield Act found at G.S. 8-58.6(b)(3). Counsel stated that while he did not seek to introduce the evidence to impeach the prosecutrix's testimony, the ultimate effect of its admission under G.S. 8-58.6(b)(3) would be to impeach her. We agree that the evidence of the prosecutrix's prior sexual conduct with Carter might strengthen defendant's theory that she sought to have sex with defendant in order to hurt Carter, and so

might tend to impeach her testimony at trial. Yet, this type of evidence, of prior sex with a boyfriend, has a high potential for producing erroneous prejudicial inferences, *e.g.*, that the prosecutrix is an immoral or "loose" woman and therefore is more likely to have sex with any man, including defendant. Further, the probative value of the evidence of prior sex with Carter, *i.e.*, what it might add to the defense theory that the prosecutrix fabricated the criminal offense to get back at Carter, is really very small as compared to the prejudicial effect it might have produced at trial. At the in-camera hearing, the trial judge stated that the defendant could introduce evidence that Carter and the prosecutrix had a dating relationship. This was sufficient to present the defense theory to the jury. Evidence of particular sexual encounters between the prosecutrix and Carter, however, would clearly carry a high risk of producing prejudicial inferences, but would do very little towards making the crucial link in the defense theory between the prosecutrix's relationship with Carter and her encounter with defendant the evening of 20 February 1984. The trial judge's exclusion of evidence of the prosecutrix's prior sexual activity was consistent with the letter and the spirit of the Rape Shield Act.

The defendant's contention as to the trial judge's failure to exclude portions of the prosecutrix's out-of-court statement to police was not presented according to our Rules, *see* Rule 28(b)(5), and we therefore will not consider it.

No error.

Chief Judge HEDRICK and Judge COZORT concur.