STATE OF NORTH CAROLINA v. KENNETH MORRISON

No. 8614SC750

(Filed 20 January 1987)

1. **Searches and Seizures § 35— search incident to arrest—removal of items from plain view at crime scene**

   In a prosecution of defendant for attempted rape, the trial court did not err in denying defendant's motion to suppress clothing, a knife, and a hammer seized from defendant's apartment where an officer responded to defendant's call for help and went into his apartment; the officer secured what reasonably appeared to be a crime scene; officers arrived while the area was still secured and removed objects in plain view; and the evidence was thus properly admitted into evidence.

2. **Rape and Allied Offenses § 4.3— sexual relationship between prosecutrix and State's witness—no admissibility for impeachment**

   In a prosecution for attempted rape, there was no merit to defendant's contention that testimony as to the sexual relationship between the prosecutrix and a State's witness should have been admitted in order to impeach the prosecutrix, since defendant failed to show that testimony of the two witnesses was inconsistent, and the statement sought to be introduced had no direct relation to the issues in the case and was therefore irrelevant.

3. **Rape and Allied Offenses § 4.3— sexual relationship between prosecutrix and State's witness—no admissibility to show bias**

   In a prosecution for attempted rape, evidence of a State's witness's sexual relationship with the prosecutrix was inadmissible to show bias since its admission would greatly increase the risk of prejudicing the jury; the prosecutrix had already testified that the two were friends and had dated at one point; and this was enough to support an argument of bias. N.C.G.S. 8C-1, Rule 403.

4. **Rape and Allied Offenses § 4.3— reputation of prosecutrix in community for veracity—testimony of supervisor properly excluded—witness's personal opinion improperly excluded**

   The trial court in an attempted rape case did not err in refusing to allow the prosecutrix's supervisor to testify as to prosecutrix's reputation in the community for truth and veracity, since the supervisor testified that she had known the prosecutrix for six or seven months; her opinion of prosecutrix's reputation was predicated on two incidents involving stealing from retail stores; and no showing was made that she was familiar with an appreciable group of people who had an adequate basis upon which to form their opinion of prosecutrix's character for truth and veracity. However, the court did err in excluding the witness's personal opinion of that character where the witness testified that she had formed an opinion based on personal knowledge gained in the course of her position as the prosecutrix's supervisor, but such error did not require reversal because the prosecutrix's testimony was strongly corroborated and the jury had adequate opportunity to judge her credibility on cross-examination. N.C.G.S. 8C-1, Rule 608(a).

5. **Rape and Allied Offenses § 5— attempted second degree rape—sufficiency of evidence**

Evidence was sufficient to support a conviction of defendant for attempted second degree rape where it tended to show that defendant restrained prosecutrix against her will in her bedroom; he threw her on the bed, choked her, and proceeded to strip off her jeans and panties; he told her, "After I do this, you will be mine"; she remonstrated with him to stop; he lay on top of her and began moving his body over her; and although defendant never tried to pry her legs apart with his hands, prosecutrix testified that "he simply tried to just penetrate me from a straight position on top of me."

APPEAL by defendant from *Herring, Judge.* Judgment entered in DURHAM County Superior Court 20 February 1986. Heard in the Court of Appeals 10 December 1986.

Defendant was indicted on charges of attempted first degree rape in violation of N.C. Gen. Stat. § 14-27.2 and the lesser included offense of attempted second degree rape in violation of G.S. § 14-27.3. Defendant pleaded not guilty, and the matter was heard before a jury. At trial, the State's evidence tended to show the following events and circumstances.

Defendant Kenneth Morrison was a public safety officer with the City of Durham at the time he and prosecutrix Benita Jenkins met. Defendant had asked a neighbor of his, Nate Tanner, if he had a typewriter he could borrow. Mr. Tanner did not own one, but he offered to ask someone he knew — Benita Jenkins — if defendant could borrow hers. When Ms. Jenkins brought the typewriter to Tanner, she was introduced to Morrison. About a week and a half later, Officer Morrison called Ms. Jenkins and asked her for a date; he had gotten her unlisted telephone number by surreptitiously looking in Nate Tanner's address book. She turned him down, but he kept calling her. Finally, thinking to put an end to the persistent calling, she agreed to a late dinner. Defendant picked her up and they went to a restaurant. After dinner, he drove her back to her apartment, and they sat outside in his car and talked. At one point, he grabbed her hand and put it on his penis. She got out of the car and ran into the apartment and told her roommate what had happened. About 10 minutes later, defendant telephoned to ask her for another date. She declined, citing his rude behavior.

Defendant again began calling her repeatedly. The pace picked up on Sunday, 28 April, when he called her so many times

that prosecutrix could not remember the number. Once again, she agreed to meet him in order to put an end to the calls. Defendant came to pick her up at 9:40 wearing dirty sweatclothes; he told Ms. Jenkins he needed to change before dinner. They went by his apartment so he could change; she followed him in rather than waiting alone in the car. She stood in the kitchen talking to defendant who was in the bedroom. At one point, defendant went into the living room, locked the door and came into the kitchen. Defendant grabbed Ms. Jenkins and forced her into the bedroom where he pushed her onto the bed. He told her, "After I do this, you will be mine." He began to choke her; she was sufficiently weakened that he was able to pull her pants and underwear to her knees.

As the struggle proceeded, they fell from the bed to the floor. Ms. Jenkins kicked off her jeans and panties in order to better resist. Defendant fell on top of her, pulled his penis from his sweat pants and tried to penetrate her. She kept her legs tightly together and, since he was holding her neck and shoulders with both hands, he was unable to pry her legs apart.

Sometime during the struggle, Ms. Jenkins managed to get hold of a hammer. When the opportunity arose, she hit defendant in the head with it and ran into the kitchen. He followed, and she grabbed a knife and swung it at him. A towel on the stove caught fire; defendant was distracted and Ms. Jenkins unlocked the door. Defendant threw her clothes to her, and she left.

The struggle was loud and violent enough to have attracted the attention of Durham Public Safety Officer Steven L. Smith, who was at the apartment complex to serve a warrant on another tenant. He saw Ms. Jenkins run screaming from defendant's apartment, carrying clothes and a knife. Officer Smith asked her to drop the knife, and she did. Defendant, who had come out onto the landing of the upstairs apartment, called to the officer, whom he knew, saying, "Steve, I need you. I need help up here." Defendant was covered with blood. Ms. Jenkins began beating on Nate Tanner's door; he opened it and Officer Smith requested that Tanner and his fiancee, who was there at the time, take her inside. In the meantime, defendant had come downstairs to retrieve the knife and then returned to his apartment. Defendant was waiting on the landing outside his door when Officer Smith

came upstairs. Smith then followed defendant inside, through the living room and kitchen to the bathroom where Officer Smith assisted him with his lacerations to the head and fingers. The officer suggested they leave the apartment since it was a crime scene; defendant complied. While inside, Officer Smith saw the defendant pick up a knife from the table and toss it into the kitchen sink. He also observed the furniture in disarray, the hammer, and the burned towel.

A second officer arrived as they left the apartment. He secured the area, and detectives came later and conducted a search of the premises.

Defendant did not testify and offered no evidence pertinent to our disposition of this appeal.

From a judgment of imprisonment entered on the verdict, defendant has appealed.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Daniel F. McLawhorn, for the State.*

*Loflin & Loflin, by Thomas H. Loflin, III, for defendant-appellant.*

WELLS, Judge.

In his first assignment of error, defendant contends that the trial court's findings of fact pursuant to defendant's motion to suppress evidence are unsupported by the testimony on *voir dire*. N.C. Gen. Stat. § 1A-1, Rule 28(b)(5) of the N.C. Rules of Appellate Procedure states that "the body of the argument shall contain citations of authority upon which the appellant relies." Since defendant failed to cite authority in support of his argument, we deem this assignment of error to be abandoned. *See Groves & Sons v. State*, 50 N.C. App. 1, 273 S.E. 2d 465 (1980), *cert. denied*, 302 N.C. 396, 279 S.E. 2d 353 (1981).

[1] Defendant next contends that the trial court improperly denied defendant's motion to suppress evidence which Officer Smith first saw as he entered the apartment and which detectives later removed. He denies that his behavior amounted to a waiver of his constitutional rights not to have his apartment searched and items therein seized without a valid search warrant. We disagree.

In *State v. Jolley*, 312 N.C. 296, 321 S.E. 2d 883 (1984), *cert. denied*, 470 U.S. 1051, 105 S.Ct. 1751, 84 L.Ed. 2d 816 (1985), our Supreme Court considered a similar issue. Defendant in that case called the telephone operator and asked that help be sent to the Jolley residence; her husband had been shot. Rescue personnel arrived and proceeded to perform CPR. Deputy Sheriff Summers arrived soon thereafter; he noticed a semi-automatic rifle along with some cartridges and spent shells, propped against a chair, about six feet from the victim. Defendant was kneeling on the kitchen floor, crying. Deputy Summers testified that he felt it would calm her to get away from her husband's body; he helped her outside and into the front seat of the patrol car. The emergency crew left with the victim, and Deputy Summers roped off the residence as a crime scene. He later removed the gun, cartridges and spent shells. Defendant, who presented evidence at trial that the gun went off accidentally, contended on appeal that the trial court erred in admitting the rifle into evidence. In upholding the decision of the trial court, the Supreme Court stated:

> We hold that when a law enforcement officer enters private premises in response to a call for help and thereby comes upon what reasonably appears to be the scene of a crime, and secures the crime scene from persons other than law enforcement officers by appropriate means, all property within the crime scene in plain view which the officer has probable cause to associate with criminal activity is thereby lawfully seized within the meaning of the fourth amendment. Officers arriving at the crime scene thereafter and while it is still secured can examine and remove property in plain view without a search warrant.

*Id.* In the instant case, Officer Smith testified that, when he first saw defendant, he had come out of his apartment after Ms. Jenkins. Defendant was covered with blood, particularly his face and hands. He said to Officer Smith, "Steve, I need you up here. I need help." Officer Smith quickly checked on Ms. Jenkins, then proceeded to the top of the steps; he followed defendant into the apartment, through the living room, kitchen and bedroom into the bathroom, where he assisted defendant with his lacerations. While inside the apartment, he saw the hammer and also observed the defendant take a knife from the table and toss it into the kitchen sink. Detectives arrived and removed clothing, a knife

and a hammer. Thus, Officer Smith responded to a call for help from the defendant; he secured what reasonably appeared to be a crime scene; officers arrived while the area was still secured and removed objects in plain view. Therefore, the objects were properly admitted into evidence, and this assignment is overruled.

Defendant's next assignment of error contains the nature of the relationship between Ms. Jenkins and State's witness Nate Tanner. Ms. Jenkins denied that she and Mr. Tanner were ever boyfriend and girlfriend. On *voir dire*, Mr. Tanner testified that he and Ms. Jenkins had engaged in sexual intercourse two or three times. Defendant contends that the court erred in ruling that defendant could not elicit on cross-examination the sexual nature of the relationship in order to impeach the testimony of prosecutrix that she did not have a boyfriend-girlfriend relationship and to show bias on the part of Mr. Tanner. We disagree.

[2] We first address defendant's contention that the testimony should be admitted in order to impeach the prosecutrix. Ms. Jenkins testified that she and Mr. Tanner did have a "boy-girl," dating sort of relationship although she denied that they were boyfriend and girlfriend. Mr. Tanner himself testified that the two were never boyfriend and girlfriend although they had in fact slept together. Defendant has failed to show that testimony of the two witnesses was inconsistent. Even if defendant had shown that the statements were inconsistent, the evidence would still be inadmissible since the statement sought to be introduced has no direct relation to the issues in this case and is therefore irrelevant. *See State v. Younger*, 306 N.C. 692, 295 S.E. 2d 453 (1982).

[3] We now turn to the question of whether evidence of Tanner's sexual relationship with prosecutrix is admissible to show bias. Although relevant, evidence may be excluded if its probative value is substantially outweighed by its prejudicial effect. G.S. § 8C-1, Rule 403 of the N.C. Rules of Evidence. Whether or not to exclude evidence under this rule is a matter within the sound discretion of the trial judge. *State v. Mason*, 315 N.C. 724, 340 S.E. 2d 430 (1986). Here, the evidence in question is that of Ms. Jenkins' prior sexual encounters. Although relevant to the issue of Tanner's bias, its admission would greatly increase the risk of prejudicing the jury. Its probative value, on the other hand, is quite weak; prosecutrix herself testified that the two were

friends and at one point had dated. This evidence is enough to support an argument of bias. *See State v. Parker*, 76 N.C. App. 465, 333 S.E. 2d 515, *disc. rev. denied*, 314 N.C. 673, 336 S.E. 2d 404 (1985). Therefore, it was well within the discretion of the trial court to limit testimony to the dating relationship. This assignment is overruled.

Defendant assigns error concerning the trial court's exclusion of testimony as to Ms. Jenkins' character for truth and veracity. The witness, Ms. Hayward, was Ms. Jenkins' supervisor at the Marianne's store where Ms. Jenkins was a cashier. After objection to defense counsel's attempt to elicit testimony as to her knowledge of prosecutrix' reputation for truth and as to her own opinion of her character, a *voir dire* was held. Ms. Hayward testified that Ms. Jenkins was caught stealing in a Sears store and that later she was dismissed from her position with Marianne's for failing to ring up some items she was checking out for a close friend. The court concluded that the witness's "basis for knowledge of reputation for truthfulness is an impermissible basis under the law." Defendant contends that the trial court erred in ruling that Ms. Hayward could testifiy neither as to prosecutrix' reputation in the community for truth and veracity nor to her own personal opinion of that character.

[4] We first address defendant's assertion that the trial court should have allowed Ms. Hayward to testify as to Ms. Jenkins' reputation in the community. N.C. Gen. Stat. § 8C-1, Rule 608(a) of the Rules of Evidence states as follows:

(a) *Opinion and Reputation Evidence of Character.* The credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion as provided in Rule 405(a), but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Our courts have held that, before a witness may testify as to another witness's reputation, a foundation must be laid showing that the testifying witness has sufficient contact with the community to enable him to be qualified as knowing the general reputation of the person in question. *State v. Sidden*, 315 N.C. 539, 340

S.E. 2d 340 (1986); *State v. McEachern*, 283 N.C. 57, 194 S.E. 2d 787 (1973). In the case at bar, Ms. Hayward testified that she has known Ms. Jenkins for six or seven months, and that her reputation was predicated on the two incidents mentioned above. No showing was made that she was familiar with "an appreciable group of people who have adequate basis upon which to form their opinion" of Ms. Jenkins' character for truth and veracity. *State v. McEachern, supra.* The trial court's ruling on this issue was correct.

With the introduction of Rule 608(a) of the Rules of Evidence in 1984, the long-standing North Carolina rule against allowing a witness to testify as to his own opinion of another's character for truth and veracity was abrogated. *See State v. Sidden, supra.* However, our courts have not yet addressed the question of when a witness is qualified to give such an opinion. As our rules are based on the Federal Rules of Evidence, we turn for guidance to decisions of the federal courts which address this issue.

In *U.S. v. Lollar*, 606 F. 2d 587 (5th Cir. 1979), the Fifth Circuit considered whether a foundation need be laid for such opinion testimony. In holding that prior questioning of the opinion witness regarding his knowledge of defendant's reputation was unnecessary, the court held:

> The rule imposes no prerequisite conditioned upon long acquaintance or recent information about the witness; cross-examination can be expected to expose defects of lack of familiarity and to reveal reliance on isolated or irrelevant instances of misconduct or the existence of feelings of personal hostility towards the principal witness.

*Id. (quoting* 3 Weinstein's Evidence § 608[04]). In *U.S. v. Watson*, 669 F. 2d 1374 (11th Cir. 1982), the Eleventh Circuit relied on *Lollar* and further reasoned:

> That opinion testimony does not require the foundation of reputation testimony follows from an analysis of the nature of the evidence involved. The reputation witness must have sufficient acquaintance with the principal witness and his community in order to ensure that the testimony adequately reflects the community's assessment. *Michelson*, 335 U.S. at 478, 69 S.Ct. at 219. In contrast, opinion testimony is

a personal assessment of character. The opinion witness is not relating community feelings, the testimony is solely the impeachment witness' own impression of an individual's character for truthfulness. Hence, a foundation of long acquaintance is not required for opinion testimony. Of course, the opinion witness must testify from personal knowledge. *See* Fed. R. Evid. 602. But once that basis is established the witness should be allowed to state his opinion, "cross-examination can be expected to expose defects." 3 Weinstein's Evidence § 608[04], at 608-20 (1981).

The court held that the District Court's exclusion of testimony for failure to meet a foundation requirement was error. Among those whose testimony was excluded was the defendant's prior employer, who testified on *voir dire* that he had employed defendant for approximately three months and that he had a bad opinion of defendant's character for truthfulness.

In the case at bar, Ms. Hayward had formed an opinion based on personal knowledge gained in the course of her position as Ms. Jenkins' supervisor. This threshold requirement was all that was needed in order to allow her to testify as to her opinion of the prosecutrix' character for truth and veracity, and the trial court's exclusion of her testimony for failure to meet a requirement was error.

We now decide whether that error requires a reversal of the decision below. In *U.S. v. Watson, supra,* the Fifth Circuit held that error of this type abridges a "fundamental element of due process of law" (right to compulsory process). *Id., quoting Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed. 2d 1019 (1967). In order to find such constitutional error harmless, we must find it harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 705, 87 S.Ct. 824 (1967); *State v. Heard,* 285 N.C. 167, 203 S.E. 2d 826 (1974). Here, although prosecutrix' testimony was crucial to the State's case, her testimony was strongly corroborated by that of the policeman who heard the disturbance and arrived in time to witness Ms. Jenkins flee the apartment with her clothes in hand, screaming hysterically. There is also physical evidence, the hammer and the knife, and the testimony regarding defendant's injuries. In addition, the jury had adequate opportunity to judge Ms. Jenkins' credibility on

cross-examination; the defense attorney questioned her at some length regarding the checkout-line incident and she admitted that she was dismissed from her job as a result. We therefore find that the trial court's error in excluding Ms. Hayward's opinion testimony regarding prosecutrix' character for truth and veracity was harmless beyond a reasonable doubt.

[5] Defendant contends that the trial court improperly denied his motion at the close of the evidence to dismiss the charge of attempted second-degree rape. We disagree.

In order to decide whether there is sufficient evidence in a criminal prosecution to overcome a motion for dismissal, directed verdict or nonsuit the trial court must decide whether there is substantial evidence of each element of the offense charged. *State v. Moser*, 74 N.C. App. 216, 328 S.E. 2d 315 (1985); *State v. Smith*, 300 N.C. 71, 265 S.E. 2d 164 (1980). Substantial evidence is such relevant evidence as a reasonable man might accept as adequate to support a conclusion. *Id.*

G.S. § 14-27.3 defines second-degree rape as (1) vaginal intercourse, (2) with another person, (3) by force and (4) against the will of that person. G.S. § 14-27.6 sets the penalty for attempted second-degree rape, but it does not define "attempt." However, our courts have defined an attempt to commit rape as having the elements of (1) an intent to commit rape, and (2) an overt act done for that purpose which goes beyond mere preparation but falls short of the completed offense. *State v. Moser, supra; State v. Freeman*, 307 N.C. 445, 298 S.E. 2d 376 (1983).

In the case at bar, the prosecutrix testified that defendant restrained her against her will in the bedroom. He threw her on the bed, choked her and proceeded to strip off her jeans and panties; he told her, "After I do this, you will be mine." She remonstrated with him to stop. He lay on top of her and began moving his body over her; although defendant never tried to pry her legs apart with his hands, prosecutrix testified that "he simply tried to just penetrate me from a straight position on top of me." Thus, the trial court could find that there was substantial evidence that defendant intended to have vaginal intercourse with Ms. Jenkins, against her will and by force. Her testimony that he tried to penetrate her from above is clearly substantial evidence of "an overt act . . . which goes beyond mere preparation." For these reasons,

the trial court did not err in denying defendant's motion for a directed verdict. This assignment is overruled.

No error.

Judges PARKER and COZORT concur.