STATE OF NORTH CAROLINA v. ERNEST RICHARD COFIELD

No. 335PA88

(Filed 8 June 1989)

**1. Grand Jury § 3.3— selection of foreman—racial discrimination**

 The State failed to rebut defendant's prima facie showing of racial discrimination in the selection of a grand jury foreman in a prosecution for rape and breaking or entering where the district attorney asked the judge on the opening day of court but prior to the actual opening of court to appoint a black grand jury foreman; the judge, who had just rotated into the district, responded that he could not make a commitment at that time; court was opened and nine new members were called to the grand jury to join the returning nine members, for a total of thirteen blacks and five whites; the judge then summoned the district attorney, the clerk of court and the sheriff to the bench to select a grand jury foreman; the judge asked the officials to confer and to make a recommendation; the sheriff knew one of the jurors, who was recommended; the juror, who was white, was pointed out to the judge; the judge testified that he had no prior idea of who the grand juror was or of his race; and the recommended grand juror was appointed as grand jury foreman. It is obvious that all black grand jurors and all white grand jurors other than the one chosen were excluded from consideration, and the conclusion of the trial judge who heard defendant's motion to dismiss the indictment that the selection of the grand jury foreman in this case was racially neutral was not supported by the findings of fact. This opinion applies only to this case and cases in which the indicting grand jury's foreman is selected after the certification date of this opinion. Art. I, §§ 19 and 26 of the N. C. Constitution.

**2. Criminal Law § 138.29— rape—nonstatutory aggravating factor—continued mental and emotional suffering**

 In an appeal in which defendant's conviction for second degree rape was set aside on other grounds, the Supreme Court upheld a finding in aggravation that the victim continued to suffer mentally and emotionally from the incident

where the uncontradicted evidence before the court was that three years and eight months after the defendant's attack on her the victim was still experiencing nightmares in which she saw defendant laughing while raping and strangling her and was still feeling that something was wrong with her as a result of defendant's attack. There was evidence that the victim's trauma was the result of extraordinary circumstances not inherent in second degree rape in that the victim testified that defendant repeatedly stated that she would tell and that he would be hung for the rape and, although the victim told defendant that she would tell no one, he responded by choking her into unconsciousness. N.C.G.S. § 15A-1340.3.

Justice MITCHELL concurring in the result.

Justice WEBB dissenting.

APPEAL by defendant pursuant to N.C.G.S. § 7A-31 from an order and a judgment entered by *Hobgood, Hamilton H., J.,* at the 17 and 18 February 1988 Special Session of NORTHAMPTON County Superior Court. Heard in the Supreme Court 14 February 1989.

*Lacy H. Thornburg, Attorney General,* by *John H. Watters, Assistant Attorney General,* for the State.

*John W. Gresham* and *Malcolm Ray Hunter, Jr., Appellate Defender,* by *Daniel R. Pollitt, Assistant Appellate Defender,* for *defendant-appellant.*

*Gulley, Eakes, Volland* and *Calhoun,* by *Michael D. Calhoun,* for *North Carolina Civil Liberties Union Legal Foundation, amicus curiae.*

MEYER, Justice.

On 2 July 1984, the Northampton County grand jury indicted defendant on one count of first-degree rape and one count of felonious breaking or entering. Defendant filed a pretrial motion to dismiss the indictment on the grounds of racial discrimination in the selection of the grand jury foreman. The trial court denied the motion. Defendant was tried at the 30 July 1984 Session of Northampton County Superior Court before Allsbrook, J., and a jury. The jury found defendant guilty of second-degree rape and felonious breaking or entering. The trial court sentenced defendant to a term of thirty years on the rape conviction and a consecutive term of three years on the breaking or entering conviction. Defendant appealed.

A panel of the Court of Appeals, with one judge dissenting, affirmed the trial court's refusal to dismiss the indictment, but unanimously remanded the case for resentencing. *State v. Cofield*, 77 N.C. App. 699, 336 S.E. 2d 439 (1985). Defendant appealed to this Court the affirmation of the trial court's refusal to dismiss the indictment.

This Court held that defendant had made out a prima facie case of racial discrimination in the selection of the grand jury foreman. The case was remanded for a hearing so that the State might have an opportunity to rebut defendant's prima facie showing and for resentencing. *State v. Cofield*, 320 N.C. 297, 357 S.E. 2d 622 (1987) (*Cofield I*).

At the hearing on remand, the trial court found that the foreman of the grand jury which indicted defendant had been selected in a racially neutral manner and allowed the indictment to stand. Defendant entered an oral notice of appeal. The trial court then proceeded with defendant's resentencing. After presentation of evidence from the State and defendant, the trial court found that the aggravating factors outweighed the mitigating factors in the rape conviction and sentenced defendant to a term of eighteen years imprisonment. The trial court also sentenced defendant to a consecutive term of three years on the breaking or entering conviction. Defendant appealed the sentence on the rape conviction.

On 15 July 1988 defendant filed a petition for discretionary review prior to determination by the Court of Appeals. This Court allowed defendant's petition on 6 October 1988.

I.

[1] The first question we address is whether the trial court erred in determining that the State had rebutted defendant's prima facie case of racial discrimination in the selection of the foreman of the grand jury that indicted him. We conclude that the trial court erred.

The State presented evidence to rebut defendant's prima facie case of racial discrimination through the persons who took

part in the grand jury foreman selection process—the presiding judge, the clerk of superior court and the district attorney.[1]

Judge Allsbrook testified that on the opening day of Northampton Superior Court in July 1984, but prior to the actual opening of court, he was approached by the district attorney, who requested him to appoint a black as the foreman of the grand jury. Judge Allsbrook responded that he could not make a commitment at that time. Judge Allsbrook testified that such a commitment would have been inappropriate because he had just rotated into the district, had not yet opened court, had no idea who the nine returning grand jurors were and did not know who else would be selected to serve as grand jurors.

After court was opened, Judge Allsbrook asked the clerk of court to call nine new members of the grand jury to join the returning nine members. Judge Allsbrook testified at the hearing that he could not recall the exact gender or racial composition of the grand jury, but he did recall that it was composed of both men and women and blacks and whites. The record reveals that this particular grand jury was composed of thirteen blacks and five whites.

Judge Allsbrook then summoned the district attorney, the clerk of court and the sheriff to the bench and informed them that he wished to select a grand jury foreman. The clerk of court and the sheriff were told of the district attorney's request that a black be appointed. Judge Allsbrook asked the officials to confer and to make a recommendation. The sheriff knew one of the jurors, a Mr. Edward Regan. The sheriff informed Judge Allsbrook that Mr. Regan was retired, had moved back to North Carolina and was at that time living locally. Mr. Regan was characterized as a highly educated man who had held a responsible position with a company. He was further described as a very dependable, mature individual, who had served on the grand jury during the previous six months. The sheriff and the clerk of court agreed that Mr. Regan would be the best choice for the position of grand jury foreman. Once the recommendation was made, Mr. Regan was pointed out to Judge Allsbrook. Mr. Regan was a white male

1. Sheriff Bob Corey, who also took part in the recommendation process, died prior to the hearing on remand.

in his mid-sixties. Judge Allsbrook testified that prior to his being pointed out to him, he had no idea who Mr. Regan was and no idea of his race. Judge Allsbrook also testified that he had never either appointed or failed to appoint a grand jury foreman on the basis of race.

Finally, Judge Allsbrook testified that the qualities he sought in a grand jury foreman included leadership abilities, fairness, the ability to follow instructions and preferably some grand jury experience. He routinely conferred with the elected officials in the courtroom in order to benefit from their experience with the grand jury during the previous six months. On this occasion, after a short conversation with Mr. Regan, Judge Allsbrook appointed him as the grand jury foreman.

The clerk of superior court testified to the procedure used to select Mr. Regan as grand jury foreman and to the procedure generally used by Judge Allsbrook. The transcript reveals that the clerk's testimony corroborates that of the judge. The clerk further testified that he had never made a recommendation for a grand jury foreman on the basis of race; rather, the attributes he sought were community leadership, education and the ability to moderate.

The district attorney testified that he requested the judge to appoint a black grand jury foreman. He also testified that Judge Allsbrook had never indicated that he would not appoint a particular person because of race, and in this instance, the judge indicated that he was considering appointing a black grand jury foreman. The district attorney made no recommendation for foreman in this instance because he knew none of the grand jurors.

Defendant presented the following evidence to support his prima facie showing of racial discrimination in the selection of the grand jury foreman. Six black members of the grand jury which indicted defendant testified. Some of them were lifelong county residents who were college graduates, state employees and business owners. They testified that no effort was made to ascertain their qualifications for the position of grand jury foreman.

Defendant also presented certain statistical evidence based upon Judge Allsbrook's selection of foremen over approximately a ten-year historical period. While such evidence is pertinent to

establishing a prima facie case of discrimination, it has little relevance in determining whether the foreman of the particular grand jury which indicted the defendant in this case was selected as a result of racial discrimination. A discussion of this statistical evidence is unnecessary to our decision in this case.

In its order after the remand hearing, the trial judge made the following findings of fact:

15. The undersigned Judge has heard the evidence presented by the parties and has had the opportunity to see and to listen to the witnesses and determine credibility. The Court finds the reasons given by Judge Allsbrook for his appointment of Edward Regan are credible and not pretextural [sic].

16. In making this credibility determination, this Court has listened to and considered the statistical evidence presented by defendant Cofield concerning Judge Allsbrook's history of appointing grand jury foremen. This evidence is relevant, if at all, only on the issue of whether Judge Allsbrook's stated reasons for appointing Edward Regan are merely pretextural [sic]. This evidence fails to undermine Judge Allsbrook's testimony concerning his reasons for appointing Edward Regan. The statistical evidence did not control the factors of the educational level of the prior appointees by [Judge] Allsbrook, their previous grand jury service, or recommendations for appointment made by the grand jury itself.

The trial judge then concluded as a matter of law that:

1. The State has rebutted the prima facie case put forth by the defendant by showing that Judge Allsbrook's selection of the grand jury foreman in this case was not based on the race of the individual and therefore was racially neutral.

In *Cofield I* we stated:

Discrimination in the selection of grand jury foremen is no less wrong, and no less contrary to the letter and spirit of our constitution, than discrimination in the selection of jurors generally. . . . The foreman, by his very title, is distinguished from other members of the grand jury. . . . Because

the foreman is thus set apart, it is as important to ensure racial neutrality in the selection of this officer as it is to avoid racial discrimination in the selection of grand and petit jurors generally.

*State v. Cofield*, 320 N.C. 297, 303, 357 S.E. 2d 622, 626.

In *Cofield I* we also defined the two methods by which racial discrimination could be demonstrated on a prima facie basis. We stated:

[A] black defendant may make out a prima facie case of racial discrimination in the [grand jury] foreman's selection by showing either (1) that the selection procedure itself was not racially neutral, or (2) that for a substantial period in the past relatively few blacks have served in the position of foreman even though a substantial number have been selected to serve as members of grand juries.

*Id.* at 308-09, 357 S.E. 2d at 629. We determined that in defendant's case, he had produced sufficient evidence to satisfy the second of these tests. However, we also stated:

Although defendant's evidence is enough to make out a prima facie case of such discrimination, the state may rebut defendant's prima facie case on remand by offering evidence that *the process used in selecting the grand jury foreman in these proceedings* was in fact racially neutral.

*Id.* (emphasis added). The scope of our inquiry on this issue is limited to a review of that evidence pertinent to the procedure used to select the foreman of the grand jury *which indicted defendant in this case.*

In *State v. Mitchell*, 321 N.C. 650, 653, 365 S.E. 2d 554, 556 (1988), this Court recognized that *Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed. 2d 69 (1986), and *Cofield I* stand for the analogous propositions that potential jurors may not be excluded nor grand jury foremen selected on racially discriminatory grounds. Accordingly, if the State can show both a racially neutral selection process and a racially neutral reason for the grand jury foreman's selection in this case, it will have successfully rebutted defendant's prima facie showing of racial discrimination in that selection.

The determination here—that is, whether racially neutral criteria offered in explanation of the selection of the foreman were used—is largely a determination of credibility and, as such, is a finding of fact to which great deference must be paid. *Batson v. Kentucky*, 476 U.S. at 98 n.21, 90 L.Ed. 2d at 89 n.21; *State v. Jackson*, 322 N.C. 251, 368 S.E. 2d 838 (1988). The general rule in North Carolina is that a trial court's findings of fact which are supported by the evidence are binding on appeal even where the evidence is conflicting. *State v. Corley*, 310 N.C. 40, 311 S.E. 2d 540 (1984); *State v. Stevens*, 305 N.C. 712, 291 S.E. 2d 585 (1982).

In this case, Judge Allsbrook testified that he looked for qualities such as leadership ability, fairness, the ability to follow instructions and preferably some prior grand jury experience in the person whom he selected as grand jury foreman. These are legitimate *racially neutral* selection criteria which are reasonably related to the leadership role of the grand jury foreman. *See Cofield I*, 320 N.C. at 303, 357 S.E. 2d at 626 ("As the titular head of the grand jury, the foreman is first among equals, both in the eyes of his fellow jurors and in the eyes of the public."). Mr. Regan, the person appointed as foreman of the grand jury which indicted defendant, fitted Judge Allsbrook's grand jury foreman selection criteria by virtue of his education and work experience, as well as his prior grand jury experience. Further, defendant's expert witness acknowledged that his statistical computations did not demonstrate that Judge Allsbrook engaged in racial discrimination in the selection of the grand jury foreman in this instance. Finally, the trial court had the opportunity to observe and to listen to the witnesses at the hearing and was therefore in the best position to determine their credibility.

Based on the relevant evidence presented and the credibility of the witnesses, the trial court concluded as a matter of law that the State had successfully rebutted defendant's prima facie showing of racial discrimination in Judge Allsbrook's selection of the foreman of the grand jury which indicted him. *See State v. Wright*, 274 N.C. 380, 163 S.E. 2d 897 (1968); *State v. Wilson*, 262 N.C. 419, 137 S.E. 2d 109 (1964). We have determined that this conclusion is not supported by the findings of fact.

While we are satisfied that there was not the slightest hint of racial motivation in Judge Allsbrook's selection of Mr. Regan

as grand jury foreman, our inquiry does not end there. We conclude that the selection process used here was not racially neutral because it excluded from consideration as foreman all of the black grand jury members.

The trial court found that neither the district attorney nor the clerk of court knew any of the grand jurors. The sheriff apparently recommended Mr. Regan because he knew him personally. The sheriff did not indicate that he knew any other grand jurors. Because only Mr. Regan, who is white, was considered, it is obvious that all black grand jurors were excluded from consideration. It is likewise obvious that all white grand jurors, other than Mr. Regan, were also excluded. We therefore conclude that the trial court's conclusion that "the selection of the grand jury foreman in this case . . . was racially neutral" is unsupported by the findings of fact which did not address the failure of the appointing judge to consider all grand jurors.

In *Cofield I*, we noted that by adoption of article I, section 26, the people of North Carolina "have recognized that the judicial system of a democratic society must operate evenhandedly . . . [and] must also be *perceived* to operate evenhandedly." *State v. Cofield*, 320 N.C. at 302, 357 S.E. 2d at 625. We concluded that racial discrimination in the selection of grand jury foremen violates article I, sections 19 and 26 of the North Carolina Constitution, which provides respectively that "[n]o person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin," and that "[n]o person shall be excluded from jury service on account of sex, race, color, religion, or national origin." N.C. Const. art. I, §§ 19, 26 (1970). The spirit of article I, section 26 of our Constitution requires that *all* grand jurors be considered for appointment as grand jury foreman.[2]

The statistics produced by defendant's expert in this case showed that, by using the recommendation method described

2. The author of the concurring opinion concludes that "a random selection method similar to that by which a name is drawn from a container when selecting the members of the grand jury under N.C.G.S. § 15A-622(b) will, in all probability, be the most clearly racially neutral and, therefore, constitutional method of selecting the foreman of the grand jury which can be devised." We do not consider or decide whether such a random method meets the requirement "that *all* grand jurors be considered for appointment as grand jury foreman."

above, (1) not every grand juror has the same chance of being appointed grand jury foreman, and (2) blacks have relatively less chance of being appointed grand jury foreman than do non-blacks. Because all black members and all but one white member of the grand jury in the case sub judice were eliminated from consideration for the position of grand jury foreman by the recommendation process used here, the process was not racially neutral and was a violation of article I, section 26 of our Constitution.

A method of selecting a grand jury foreman that meets the racially neutral standard must ensure that all grand jurors are considered by the presiding judge for his selection and that his selection be made on a racially neutral basis.

Because we have for the first time interpreted our state Constitution to require that, in meeting the racially neutral standard for selecting the foreman of the grand jury, the trial judge must consider all the grand jurors, our holding in that regard will apply only to this case and cases in which the indicting grand jury's foreman is selected after the certification date of this opinion. *State v. Peoples*, 311 N.C. 515, 319 S.E. 2d 177 (1984).

## II.

[2] We now address one of defendant's further assignments of error, since the issue may recur if defendant is reindicted and retried. The assignment of error relates to the resentencing phase of the hearing on remand. The facts of this case are as stated by the Court of Appeals in *State v. Cofield*, 77 N.C. App. 699, 336 S.E. 2d 439:

> On 25 June 1984, shortly after 9:00 a.m., the victim, "Debra," answered a knock at her front door. When she answered, a man wearing a blue work uniform asked for water for his logging truck which was parked outside. Debra closed the door, retrieved jugs from her kitchen and took them to an enclosed back porch to fill them. While she filled the jugs, the man entered the enclosure and asked for more water and then for a cigarette. Debra returned from her kitchen with a package of cigarettes in her hand. The man stepped to the kitchen door and received the cigarettes. While Debra turned to close the kitchen door, the man grabbed her and dragged her to her bedroom and raped her. Before he fled, the man choked

Debra until she lost consciousness. Debra later identified her assailant as defendant, Ernest Richard Cofield, a truck driver for a local logging company.

*Id.* at 700-01, 336 S.E. 2d at 440. The trial judge imposed consecutive sentences of thirty years for second-degree rape and three years for felonious breaking or entering. The Court of Appeals held that the trial court had erroneously found the nonstatutory aggravating factor "[t]hat after committing the offense of second degree rape and thereafter stating to the victim that she was going to tell on him and have him hung, the defendant then choked her until she was unconscious." *Id.* at 704, 336 S.E. 2d at 442. The court remanded for resentencing. Although the Court of Appeals did not reach defendant's contention that the trial court also erroneously found as an aggravating factor that the victim continues to suffer mentally and emotionally from this incident, it did caution that "the trial court should . . . be aware that a certain degree of emotional injury is inherent in all rape and it is presumed that the Legislature was guided by this fact when it set the presumptive sentence [twelve years] for [second-degree] rape." *Id.* at 705, 336 S.E. 2d at 442.

At the sentencing phase on remand, and after the presentation of evidence and the arguments of counsel, the trial judge found in aggravation that defendant committed the offense while on pretrial release on another felony charge, that he has a prior conviction or convictions punishable by more than sixty days confinement and that the victim continues to suffer mentally and emotionally from this incident. In mitigation the trial court found that defendant has no significant record of criminal convictions, that he has an exemplary prison record and that he has had an exemplary work record. The trial judge then determined that the factors in aggravation outweighed the factors in mitigation and sentenced defendant to a term of eighteen years for the second-degree rape and a consecutive term of three years for the breaking or entering. Defendant does not appeal the sentence for breaking or entering. However, in regard to the eighteen-year sentence for second-degree rape, he argues that insufficient evidence exists to support the nonstatutory aggravating factor that the victim continues to suffer mentally and emotionally from the second-degree rape.

Defendant asserts that this Court's prior decisions, psychiatric literature and research studies all recognize that seriously debilitating mental and emotional conditions frequently occur in victims in the aftermath of forcible rape. He contends that the evidence in this case does not show that the victim here suffered in excess of the conditions normally present in the aftermath of rape.

At the resentencing hearing, the State introduced the following evidence on the issue of the victim's mental and emotional suffering:

Q. Would you give—would you tell His Honor if you have any—suffer from any nightmares or thoughts, what your mental state has been since you—since the trial of this case in 198-—1984, I believe.

A. I have nightmares sometimes, and I think about it.

Q. When you have nightmares, can you tell His Honor what you see in your nightmares?

A. I see him [defendant].

Q. What do you see, what is happening when you see him?

A. Raping me, he is strangling me and laughing.

Q. Since this happened—since the trial of this case, have you had occasion to go talk to anybody or get any help?

A. No, because I don't want anybody to know.

Q. You feel like something is wrong because he did it to you, something is wrong with you?

A. (Nods affirmatively.)

Q. Would you answer that question?

A. Yes.

In the context of the Fair Sentencing Act, one of the primary purposes of sentencing is to impose a punishment commensurate with the injury caused by the crime. N.C.G.S. § 15A-1340.3 (1988). Although the Court of Appeals did not directly address the merits of defendant's contention on this issue in *State v. Cofield*, 77

N.C. App. 699, 336 S.E. 2d 439, the court correctly noted that where a trial court "properly finds physical or emotional injury in excess of that normally present in an offense, [it] may consider the injury [*either*] as an additional factor in aggravation *or* as proof that the offense was especially heinous, atrocious, or cruel." *Id.* at 705, 336 S.E. 2d at 442 (emphasis added) (citing *State v. Blackwelder*, 309 N.C. 410, 413 n.1, 306 S.E. 2d 783, 786 n.1 (1983) ). The test, therefore, is whether the State proved by a preponderance of the evidence that the victim's mental and emotional injury in this case was in excess of the injury normally present in the offense. *See State v. Blackwelder*, 309 N.C. at 414, 306 S.E. 2d at 786; N.C.G.S. § 15A-1340.4(a) (1988).

The uncontradicted evidence before the trial court at the resentencing hearing was that three years and eight months after defendant's attack on her, the victim was still experiencing nightmares in which she saw defendant laughing while raping and strangling her and was still feeling that "something [was] wrong with [her]" as a result of defendant's attack. In addition, there was evidence that the victim's trauma was the result of extraordinary circumstances not inherent in second-degree rape. Second-degree rape is defined as vaginal intercourse with a person not legally a spouse which is by force and against the will of the victim. *State v. Morrison*, 84 N.C. App. 41, 351 S.E. 2d 810 (1987); N.C.G.S. § 14-27.3 (1986). Unlike first-degree rape, second-degree rape does not involve a weapon, serious personal injury or multiple assailants. *State v. Locklear*, 320 N.C. 754, 360 S.E. 2d 682 (1987); N.C.G.S. § 14-27.2 (1986). The victim testified that defendant repeatedly stated that she would "tell" and that he would be "hung" for the rape. Although the victim told defendant that she would tell no one, defendant responded by choking her into unconsciousness. Clearly, the victim thought that her death was imminent. We conclude that this evidence was sufficient to prove by a preponderance that the victim suffered mental and emotional injury in excess of that normally present in second-degree rape. This assignment of error is overruled.

We hold that the State failed to rebut defendant's prima facie showing of racial discrimination in the selection of the foreman of the grand jury which indicted defendant. The verdict and judgments against defendant are set aside and the indictments quashed. Defendant, however, is not entitled to his dis-

charge. The State has the power to reindict him and may decide to do so. *State v. Cofield*, 320 N.C. 297, 309, 357 S.E. 2d 622, 629. We further hold that, in the resentencing phase, the evidence was sufficient to show by a preponderance that the victim suffered mental and emotional injury in excess of that normally present in second-degree rape.

Reversed.

Justice MITCHELL concurring in result.

I agree that the verdicts and judgments against the defendant must be vacated and that the indictment returned against him by the grand jury must be quashed. I am unable, however, to agree entirely with the reasons stated by the majority for reaching this result. Additionally, I am not in agreement with the majority's decision to discuss issues concerning sentencing which are irrelevant to the disposition of this case on appeal. Accordingly, I concur only in the result reached by the majority.

I agree that the actual selection of the grand jury foreman in the present case amounted to unintentional racial discrimination in violation of article I, section 26 of the Constitution of North Carolina, because all black members of the grand jury were denied the opportunity to serve as foreman by the recommendation process used. I am not at all sure, however, that I agree with the majority's view of the method or methods of selecting a grand jury foreman which will comply with that section's prohibition against racial discrimination.

In particular, I believe that the only qualifications the grand jury foreman may be required to possess under our laws are those qualifications any person is required by N.C.G.S. § 9-3 to possess in order to serve as a juror or as a member of the grand jury. Therefore, I do not agree with the majority's statement that all grand jurors must be "considered" for appointment as grand jury foreman, if that statement is to be read as implying that some sort of conscious weighing, balancing or comparing of the "qualifications" of the grand jurors must be undertaken in selecting a person for the position of foreman of the grand jury. Quite the contrary, I believe that a random selection method similar to that by which a name is drawn from a container when selecting

members of the grand jury under N.C.G.S. § 15A-622(b) will, in all probability, be the most clearly racially neutral and, therefore, constitutional method of selecting the foreman of the grand jury which can be devised. In my view, article I, section 26 assures that every grand juror will have an equal opportunity to serve as foreman—not that all grand jurors will be "considered" for that position.

Nor do I join in that part of the opinion of the majority discussing the sentencing of this "defendant," which I consider entirely *obiter dictum*. As a result of the majority's holding today, he does not stand convicted of any crime and is, at this point at least, not formally charged with any crime. Therefore, I find the majority's advice concerning his sentence somewhat strange at best.

For the foregoing reasons, I concur only in the result reached by the majority.

Justice WEBB dissenting.

I dissent for the reasons set forth in my dissenting opinion to the first opinion of this Court in this case.